(C. D. 311)

Marr Duplicator Co. *v.* United States

United States Customs Court, Second Division

(Decided April 4, 1940)

*Barnes, Richardson & Colburn* (*Howard C. Carter* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

KINCHELOE, Judge: These suits involve the dutiable classification of certain stencil paper imported by the Marr Duplicator Co. of New York, and shipped by the Ellams Duplicator Co., Ltd., of London. As the paper was considered not to be coated, but only impregnated, the collector of customs assessed duty thereon under paragraph 1409 of the Tariff Act of 1930, as paper not specially provided for, at the rate of 30 per centum ad valorem. The merchandise is claimed, *inter alia*, to be dutiable under paragraph 1405 of said act, as papers with coated surface or surfaces, not specially provided for, at the rate of 5 cents a pound and 15 per centum ad valorem.

Upon the trial hereof counsel for the plaintiff company stated that the merchandise here in question consists of stencil paper of the same character as that passed upon by this court in *Marr Duplicator Co.* v. *United States* (C. D. 173), in which the importer and the shipper and the issue were the same as in the present instance.

In said cited case this court found that the stencil paper there in issue was made of an extremely porous yoshino paper, to one surface of which was applied a solution of gelatin, oils, and fats, the solvent being water, which solution not only covered the surface but impregnated the interstices of the fibers of the entire basic paper, and that, after the paper was thoroughly dried, there was then applied to it a solution of nitrocellulose, oils, and fatty materials, the solvent being a mixture of industrial methylated spirits and ether. In view of this second application the court held the merchandise to be paper with a coated surface within the meaning of paragraph 1405 of the act of 1930, and properly dutiable thereunder as such, as distinguished from stencil paper simply impregnated with a solution of gelatin, etc., as was the paper in the case of *United States* v. *Duratex Stencil Co.*, 19. C. C. P. A. 341, T. D. 45499, and *Erskine* v. *United States*, 22 id. 285, T. D. 47345.

Preliminary to moving in evidence herein the record in said prior *Marr* case, counsel for the plaintiff called as a witness James Marr, president of the plaintiff company, for the purpose of proving the similarity of the merchandise in that and the present case. Mr. Marr testified that he has been associated with the Marr Duplicator Co. for 7 years, and that prior thereto he was in the same line of business for himself, manufacturing and selling stencil paper; that he tested and used stencil paper both here and in London, at which latter place he was associated with the Ellams Duplicator Co., Ltd., the shippers and manufacturers of the merchandise here in controversy; that he is familiar with the merchandise imported by his company, the Marr Duplicator Co., and with the invoice descriptions thereof; that he sees and examines samples from every shipment; that he examined all the entries covered by the protests now before us, and made a schedule of the items upon which plaintiff claims, which is in evidence as Exhibit 1. The witness stated further that he examined Exhibits 8 and 9 in said prior *Marr* case, which said exhibits represented the merchandise there in issue designated as item numbers 33 and 34 on the invoices, item number 33 consisting of white stencil paper, and item 34 of blue stencil paper; that when he was with the Ellams Duplicator Co. in England he saw the whole process of making stencil paper from beginning to end, which included both kinds, namely, that which was simply impregnated, for which he himself invented one formula, and that which was impregnated and coated afterwards; that from his experience he can tell by just looking at the paper and feeling it which is which. And when shown Exhibits 8 and 9 in said prior *Marr* case he stated they were made with the dual coating process, that is, first impregnated with a gelatin solution, and then coated with a nitrocellulose solution, and that stencil paper so subjected has certain definite characteristics, which he described as follows:

The single coating of gelatin or protein is a very dull finish. When it is run in a machine it has a tendency to pin-hole at a small number of copies. When the second coating is put on the sheet will turn out ten or twenty times as many copies. Besides, the sheet is insoluble in water, one side of it; the other side is not. The under side is; wet your finger, raise the sheet—this is from a layman's point of view—and you get coating off on the finger. You turn the coat over and you get nothing. Suppose that is varnish, insoluble varnish. (R. 7.)

The witness then stated, from his experience, examination, and tests, that the item numbers or designations set forth in Exhibit 1 herein, representing the merchandise now under consideration, have the same characteristics as the merchandise in said prior *Marr* case. In other words, that they are stencil papers which were first impregnated and then coated in the manner hereinbefore described, and being either white or blue in color.

At this point counsel for plaintiff formally moved for the incorporation of the record in said *Marr Duplicator Co.* case, cited *supra*, as a part of the record herein, which motion was granted by this court.

Under cross-examination by counsel for the Government the witness Marr further testified that he gave instructions to the manufacturer as to how to make the stencil paper in question, and that his company has been importing paper similar to said exhibits 8 and 9 in said prior case for 5 or 6 years, and that, in addition to the examination and feel of the paper to determine whether it is coated or not, the paper is also tested on the mimeograph machine, as follows:

> We take the stencil and put it on the duplicating machine with certain qualities of ink which we use and sell right along to turn out perhaps 5,000 copies. If the stencil breaks down before that number, we know that it is not exactly what it should be. We also in many cases test them with inks like a glycerin ink, which has a very bad effect on protein parts of the stencil. In other words, we make very elaborate tests, but do not make those tests on every batch. We test every batch for type-clogging, insolubility in water, for length of run, for cutting out in the typewriter, and, in other words, all of its working qualities we test. (R.19/20)

The witness stated, however, that the machine or duplicator test was not conclusive unless a water-soluble ink was used, but that the hand test was conclusive; that "when you put water on the back of the sheet and the solution comes off the finger on one side and doesn't come off on the other side, that is conclusive" in his mind, and that from all of said tests made by him he is convinced that the instant paper is identical in character to that of Exhibits 8 and 9 in said prior case.

The only witness called by the Government to dispute the conclusion arrived at by plaintiff's witness Marr was Isadore Schnopper, a chemist attached to the United States Customs Laboratory at New York for over 13 years. He testified that in the course of his duties as a chemist he has had occasion to examine and analyze between 50 and 60 stencil papers over a period of 7 or 8 years, including stencil papers of yoshino fiber and treated with gelatin, oils, and a solution of water to the base, and then also with a second application of nitrocellulose with a solution of methylated spirits and ether. He also stated that he testified in the previous *Marr* case, as also in the *Duratex Stencil Co.* case, 19 C. C. P. A. 341, *supra*. When asked whether, as a chemist and from his own experience, he could tell alone by the tests applied and described by Mr. Marr that the stencil paper in question was the same as Exhibits 8 and 9 in said prior *Marr* case, the witness stated that he could not, "because to me those tests are not conclusive it is either a stencil made by one process or a double process. I would make more definite tests in order to be positive whether it is a single bath process or a double bath process stencil." The witness admitted, however, that he had not examined any of the merchandise now before the court.

On the issue thus presented, namely, whether the present merchandise is of the same character as that in said prior case—i. e. surface-coated paper, and therefore dutiable as such under said paragraph 1405—we do not think that the negative testimony of the Government chemist, simply that he could not tell from the tests made and described by plaintiff's witness Marr that the merchandise is of the same kind as in said prior case, is entitled to nearly as much weight as the testimony of plaintiff's witness, who has been engaged in the manufacture, use, and testing of stencil paper for many years, and who not only gave the manufacturer instructions as to how to make the stencil paper, but who also examined and tested the merchandise in the manner stated upon its importation. As a matter of fact, there is really not much, if any, conflict in the testimony of the two witnesses, as it may well be that the Government chemist, with his l'mited experience with the particular kind of stencil paper, could not tell from the tests made by plaintiff's witness that the paper was coated, but that would not be proof that plaintiff's witness could not so determine, and certainly the record before us does not support any such inference.

On the record herein we are satisfied that the merchandise in controversy is the same in character as Exhibits 8 and 9 in the *Marr* case, *supra*, which was found and held to be surface-coated paper, dutiable as such under said paragraph 1405 of the act of 1930. This claim of the plaintiff is therefore sustained as to the items of merchandise enumerated in said Exhibit 1, and set forth in the appended schedule A. The protests are, however, overruled as to all other merchandise and on all other grounds. Judgment will be rendered accordingly.